UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

JOE HAND PROMOTIONS, INC.,

        Plaintiff,

  v.                                   Case No. 23-cv-719-pp

DRUNKEN COBRA LLC
and ANTHONY LAMPASONA,

        Defendants.

_____

**ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT (DKT. NO. 10)**

_____

      Plaintiff Joe Hand Promotions, Inc. has filed a renewed motion for default judgment against defendants Drunken Cobra LLC and Anthony Lampasona. Dkt. No. 10.

      On June 6, 2023, the plaintiff filed a complaint alleging that the defendants had intercepted and broadcast several boxing matches to patrons at an establishment called Drunken Cobra (owned by the corporate defendant, of which the individual defendant was an officer, director, shareholder, member or principal) without purchasing a license to broadcast those matches from the plaintiff. Dkt. No. 1. The plaintiff has filed documents asserting that it served the complaint on Lampasona on July 31, 2023 and on Drunken Cobra on August 18, 2023. Dkt. Nos. 4, 4-1. Neither defendant has appeared or responded to the complaint. On October 30, 2023, the plaintiff asked the clerk to enter default against the defendants, dkt. no. 5, and the clerk did so that

1

same day. The plaintiff filed a motion for default judgment on February 21, 2024. Dkt. No. 7. The court denied that motion without prejudice, finding that the plaintiff had not demonstrated proper service on either defendant. Dkt. No. 8. The plaintiff subsequently filed an amended proof of service, dkt. no. 9, and a renewed motion for default judgment, dkt. no. 10.

**I.      Entry of Default**

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

The court previously took issue with the proofs of service the plaintiff provided for both defendants. Dkt. No. 8 at 2–3. The original proof of service for defendant Anthony Lampasona stated that on July 31, 2023, the plaintiff's process server left a copy of the summons and complaint at Lampasona's residence with "Kristin Lampasona, Spouse." Dkt. No. 4. It did not list the address. Oddly, the *invoices* from the process server showed that Lampasona's wife was served at "2357 N. 70th St., #, Milwaukee, WI 53213-1319." Dkt. No. 7-18 at 2-3. But the proof of service itself did not reflect that address. Dkt. No. 4.

The original proof of service for defendant Drunken Cobra, LLC stated that on August 18, 2023, the plaintiff's process server delivered the summons and complaint to Anthony Lampasona, "Registered Agent." Dkt. No. 4. The

2

proof of service did not list the address where Lampasona was served. Further, the Wisconsin Department of Financial Institutions' web site identifies Kevin Heintz as the registered agent—not Lampasona. https://apps.dfi/wi/gov (search term "Drunken Cobra LLC"). Though the registered agent changed on June 2, 2024 (after the dates on which the plaintiff purported to have effected service and before the date on which the plaintiff filed the original motion for default judgment), the Department of Financial Institutions did not indicate the identity of the registered agent at the time of service. The court could not determine whether, at the time of service, Lampasona was the registered agent for Drunken Cobra. Dkt. No. 8 at 3.

The court asked the plaintiff to provide more information "regarding where each defendant was served and the identity of Drunken Cobra, LLC's registered agent at the time of service." Id. at 3. The amended proof of service reflects that Lampasona's wife was served at 2357 N. 70th St., Milwaukee, WI 53213-1319. Dkt. No. 9-1. Based on the amended proof of service, the court is satisfied that the plaintiff effectuated service on Lampasona in his individual capacity, by complying with Wis. Stat. §801.11(1)(a)(b)(1) (allowing service on a natural person by "leaving a copy of the summons at the defendant's usual place of abode: [i]n the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof").

The amended proof of service also reflects the address where Drunken Cobra purportedly was served. Dkt. No. 9 (showing service took place at 2357 N. 70th St. Milwaukee, WI 53213-1319). However, despite the court's request

3

that the plaintiff "address[] the concerns the court has expressed," the renewed motion provides no additional information regarding "the identity of Drunken Cobra, LLC's registered agent at the time of service." Dkt. No. 8 at 3-4. The plaintiff provided no new supporting documentation other than the amended proof of service.

In its renewed motion for default judgment, the plaintiff did not acknowledge the court's request for more information. The process server or counsel for the plaintiff could have provided an affidavit or some other documentation supporting the plaintiff's contention that Lampasona was the registered agent at the time of service; they did not. The court still does not know whether Lampasona was the registered agent for Drunken Cobra at the time of service, despite giving plaintiff's counsel clear direction and thirty days to comply with the court's order. The court cannot conclude that the plaintiff effected service under Wis. Stat. §801.11(5)(c). Id. (allowing service on a limited liability company "upon an agent authorized by appointment or by law to accept service of the summons"). On that basis, the court could deny the plaintiff's motion for default judgment as to Drunken Cobra.

The court concludes, however, that the amended proof of service demonstrates that the plaintiff effected service on Drunken Cobra under Wis. Stat. §801.11(5)(a), which allows service on a limited liability company "[b]y personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company." The complaint alleges that Lampasona is "an officer, director, shareholder, member and/or principal" of

4

Drunken Cobra. Dkt. No. 1 at ¶3. Taking that well-pleaded allegation as true, as the court must on a motion for default judgment, the amended proof of service does reflect that the process server served "an officer or director" of Drunken Cobra.

The court determines that the defendants were made aware of the suit via proper service of process but failed to respond to the complaint within the time permitted by the Federal Rules of Civil Procedure. The clerk's entry of default was proper.

## II.   Plaintiff's Motion for Default Judgment

After the entry of default, the plaintiff may move for default judgment under Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b)(2). Such proceedings are unnecessary, however, if the "amount claimed is liquidated or capable of

5

ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).

In the complaint, the plaintiff alleges that it held the exclusive broadcast rights to certain boxing matches between November 2020 and October 2021. Dkt. No. 1 at 3. The relevant licensing agreements are attached to the plaintiff's motion for default judgment. Dkt. Nos. 10-3 through 10-7. The defendants did not obtain a license from the plaintiff to broadcast these matches, but allegedly broadcast them at Drunken Cobra anyway. Dkt. No. 1 at 3–4. The plaintiff alleges that the defendants' conduct constitutes a willful violation of 47 U.S.C. §605, or in the alternative, a willful violation of 47 U.S.C. §553. Section 605 prohibits the unauthorized interception of television programming transmitted over the air by wire or radio and §553 prohibits the unauthorized interception of television programming traveling over a cable network. United States v. Norris, 88 F.3d 462, 468–69 (7th Cir. 1996); 47 U.S.C. §§553, 605. The allegations in the complaint, taken as true because the defendants are in default, establish that the defendants unlawfully intercepted and broadcast the boxing matches to patrons at Drunken Cobra, without a license from the plaintiff to do so, in violation of either §605 or §553.

This court and others in this district have awarded damages under §605 where, as here, the defendants' failure to appear and engage in discovery makes it impossible to determine the method of interception. J & J Sports

Prods., Inc. v. Mojitos Mexican Grill & Bar, LLC, No. 17-C-1272, 2018 WL 1709410, at *2 (E.D. Wis. Apr. 9, 2018) ("[B]ecause Mojitos' failure to appear or defend deprived Plaintiff of the opportunity to conduct discovery regarding the transmission at issue, I conclude that liability is appropriately established under § 605."); J & J Sports Prods., Inc. v. Curiel, No. 15-cv-1554, 2016 WL 3676493, at *3 (E.D. Wis. July 7, 2016) (same).

Under §605, the plaintiff may recover statutory damages of between $1,000 and $10,000 for each violation, enhanced damages of $10,000 to $100,000 per violation if the conduct was willful and costs and reasonable attorneys' fees. 47 U.S.C. §§605(e)(3)(B)(ii)–(iii), (C)(i)–(ii). The plaintiff requests $6,000 in statutory damages, representing the total licensing fees ($4,998) and a "modest estimate of profits" from the unauthorized broadcasts ($1,002). Dkt. No. 10-1 at 9. The plaintiff provided its rate cards for the broadcasts, which list the amount of money an establishment must pay to show the broadcast and demonstrate that it varies depending on the number of patrons in the audience. Dkt. Nos. 10-8 through 10-12. The plaintiff provided attendance information for one of the unauthorized broadcasts via a witness affidavit, stating that approximately seventeen patrons were present to view the June 6, 2021 broadcast. Dkt. No. 10-13 at 1. The affidavit does not provide information on attendance at the other broadcasts, but the affiant estimates the total occupancy of the Drunken Cobra at approximately 50 people. Id. Based on the attendance information for the broadcast on June 6, 2021, the Drunken Cobra's maximum occupancy of 50 people and the rate cards for the

7

broadcasts, the court finds that the evidence provided supports an award of $4,998. Because the plaintiff's motion for default and the record do not provide any basis for estimating the defendants' potential profits from the unauthorized broadcasts, the court declines to award that portion of the plaintiff's requested damages.

The plaintiff also requests enhanced damages of $36,000, equal to six times its requested statutory damages, because the defendants' conduct was willful. Dkt. No. 10-1 at 11. "'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'" Kingvision Pay-Per-View, Ltd. v. Scott E's Pub., Inc., 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (quoting ON/TV v. Julien, 763 F.2d 839, 844 (7th Cir. 1985)). A defendant's default may establish willfulness. J&J Sports, 2018 WL 1709410, at *2. Factors relevant to the assessment of the amount of enhanced damages include (1) the defendant's prior violations; (2) the amount by which the defendant profited from the violation; (3) the plaintiff's actual damages; (4) whether the defendant advertised for the event; and (5) whether the defendant charged a cover for the night in question. Id. at *3.

Here, the defendants conducted seven unauthorized broadcasts over a twelve-month period. Dkt. No. 1 at 1, 4. The defendants also advertised the broadcasts on social media. Dkt. No. 10-17. But the June 6, 2021 broadcast was sparsely attended, and the defendants did not charge a cover fee for patrons that night. Dkt. No. 10-13 at 1. The record contains no evidence of the plaintiff's actual damages or the amount by which the defendants profited. In

8

similar cases, courts in this district have applied a two or three times damages modifier. J&J Sports, 2018 WL 1709410, at *3 (applying a three times damages modifier where there was no evidence of prior violations, approximately 65 to 80 people attended the unauthorized broadcast and the establishment did not charge a cover fee); Joe Hand Promotions, Inc. v. Crosstown Rival LLC, No. 21-CV-590, 2022 WL 1539924, at *2 (E.D. Wis. May 16, 2022) (applying a two times damages modifier where there was no evidence of prior violations; the establishment conducted two unauthorized broadcasts, one of which was attended by just eight people; and the events were advertised on social media). Given the number of unauthorized broadcasts in a relatively short time period, the court will apply a three times damages modifier and award $14,994 in enhanced damages.

Finally, the plaintiff seeks $2,100 in attorneys' fees and $672 in costs. Dkt. No. 10-1 at 13. Under §605(e)(3)(B), attorneys' fees and costs are mandatory if the court finds that a violation occurred. The plaintiff attached a declaration from its attorney, Ryan R. Janis, regarding the amount of attorneys' fees the plaintiff incurred. Dkt. No. 10-14 at 2–3. The court has reviewed the supporting documentation and concludes that the claimed attorneys' fees and costs are reasonable. See J & J Sports, 2016 WL 3676493 at *5 (finding $250 hourly rate reasonable in a similar case and awarding a total of $1,250 in attorneys' fees). The court will award attorney's fees in the amount of $2,100 plus $672 in costs for the defendants' violation of §605.

### III. Conclusion

The court **GRANTS** the plaintiff's renewed motion for default judgment. Dkt. No. 10.

The court **ORDERS** that default judgment will be entered in favor of the plaintiff and against the defendant in the total amount of $22,764, inclusive of attorneys' fees and costs.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of September, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**